UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIMBERLY CLINE, individually, ) <br> and on behalf of her minor child, E.C. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant. ) | Case No. 3:13-cv-0776 <br> Judge Trauger |

## MEMORANDUM AND ORDER

Pending before the court is a Motion to Dismiss (Docket No. 12) filed by the defendant, the United States of America, to which the plaintiffs have filed a Response in opposition (Docket No. 16), and the United States has replied (Docket No. 19). For the reasons discussed herein, the motion to dismiss will be granted without prejudice.

## BACKGROUND[1]

This case stems from the tragic victimization of a child by her stepfather. Plaintiff Kimberly Cline ("KC") is the mother of plaintiff EC, a minor child born on April 18, 2001. In 2007, KC married Joshua Matthew Cline ("JMC"), who was, at that time, an active duty soldier in the United States Army. Around October 2007, JMC was deployed to Iraq.

The plaintiffs allege that, around March 2008, the Army and other federal agencies began to investigate JMC. That same month, JMC returned from Iraq to his home with KC in Clarksville, Tennessee for a two-week "rest and relaxation" tour. The plaintiffs further allege that, during his time at home, JMC made and produced pornographic material, including

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1).

1

photographs and videos of himself forcibly raping and sodomizing his stepdaughter, EC, who was then 6 years old. Around March 19, 2008, JMC returned to his duties in Iraq.

In early October 2008, the Army confiscated JMC's computer, which contained the pornographic photographs and videos from his rape of EC. Around October 3, 2008, JMC called KC from Iraq and advised her not to speak to Army investigators if they were to contact her. JMC allegedly instructed KC to avoid conversations with investigators because he had hired an attorney and she did not need to answer anything because of spousal privilege. Around October 15, 2008, an agent for the Army's Criminal Investigation Division ("CID") contacted KC. KC initially refused to speak to the agent, per JMC's instructions. A few days later, around October 19, 2008, the CID agent informed KC that if KC did not visit Army Family Services, she may face criminal prosecution. Around October 20, 2008, KC met with personnel from CID and Army Family Services. KC alleges that, in that meeting, KC expressly asked agents from the Army whether she should forbid JMC from spending time with EC alone and that the agents assured her that the investigation had nothing to do with EC. She further alleges that agents told KC to limit JMC's interaction with EC and nothing more.

JMC returned to Tennessee from Iraq around November 14, 2008. KC alleges that, at that time, KC had no knowledge of the danger posed by JMC to herself or to EC because the government agents did not warn her. Around December 6, 2008, KC gave birth to a son fathered by JMC. While KC was in the hospital giving birth to their child, JMC was alone with EC at their home. KC alleges that, during the time that she was in the hospital, JMC repeatedly raped and sodomized EC and produced a pornographic video of the assault. KC further avers that JMC attempted to sell the videos and photographs of EC on the internet and that he successfully sold a video produced in 2008 for $25,000.

Around January 15, 2009, KC returned to work after her maternity leave. KC alleges that, around January 21, 2009, Tennessee's Department of Children's Services contacted KC to warn her that it would be taking her children into state custody unless she returned home immediately. Upon arriving at her home, KC discovered that federal agents had searched her entire house. KC was interviewed by one of the federal agents, who informed her that the Army was investigating JMC for allegations of production and distribution of child pornography but failed to inform her that EC was a suspected victim of JMC. Over a year later, in March 2010, EC told a psychiatrist about her stepfather's abuse. The psychiatrist informed KC of her daughter's victimization.

KC alleges that the Army failed to warn her and her daughter, as well as federal and local law enforcement, of the dangers posed by JMC when he returned from Iraq. She claims that such omissions were negligent, willful, deliberate, knowing, and malicious, and she alleges that the defendant's actions resulted in pain, suffering, emotional distress, and a variety of other damages.

The plaintiffs filed this action on August 5, 2013, alleging five claims under the Federal Tort Claims Act, 28 U.S.C. § 1346 *et seq.* ("FTCA" or "Act"): intentional infliction of emotional distress, negligent infliction of emotional distress, negligence in standard and duty of care, negligence *per se*, and failure to warn. Specifically, the plaintiffs allege that the government's agencies have duties set forth by Army Regulations and federal law "to control the conduct of their employees" and "to protect military families."

The United States filed the pending motion on November 15, 2013. The United States has moved for dismissal of the Complaint upon two grounds: first, because the court lacks

subject matter jurisdiction over the plaintiffs' claims and second, because the plaintiffs have failed state a claim upon which relief can be granted.

## ANALYSIS

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Because a court that lacks subject matter jurisdiction over a case does not have the power to hear it, the question of subject matter jurisdiction may be raised at any time. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *United States v. Alesida*, 129 F.3d 846, 850 (6th Cir. 1997). When a defendant attacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must meet the burden of proving jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

A Rule 12(b)(1) motion may challenge the complaint on its face or it may contest the existence of subject matter in fact. If the motion attacks the face of the complaint, the plaintiff's burden "is not onerous." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The plaintiff need only demonstrate that the complaint alleges a "substantial" federal claim, meaning that prior decisions do not inescapably render the claim frivolous. *Id.* A court evaluating a facial attack must consider the allegations of fact in the complaint to be true. *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999). Thus, "the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248.

Alternatively, if a Rule 12(b)(1) motion contests subject matter jurisdiction factually, the court "must weigh the evidence" in order to determine whether it has the power to hear the case. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When the facts are disputed, "[t]he district court has broad discretion to consider affidavits, documents outside the complaint, and to

even conduct a limited evidentiary hearing if necessary." *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn. 1992), *aff'd sub nom. Myers v. United States*, 17 F.3d 890 (6th Cir. 1994). The court can do so without converting the Rule 12(b)(1) motion into a motion for summary judgment. *Id.*

Here, in its initial brief in support of its Motion to Dismiss, the United States challenged the Complaint solely on its face. Accordingly, when the plaintiffs responded to the motion, the plaintiffs did not submit any contrary evidence in support of the court's jurisdiction over their claims. In its Reply, however, the government raised a factual challenge to the Complaint and submitted the Declaration of John Edward Lennier, a records custodian for the Criminal Investigation Division of the United States Army, along with records from the Army's investigation of JMC. (Docket No. 20 ("Lennier Decl.").) The plaintiffs did not request leave to file a sur-reply or to submit any evidence in favor of the court's subject matter jurisdiction.

## II. <u>Motion to Dismiss for Failure to State a Claim</u>

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

### III.     The Federal Tort Claims Act

The FTCA provides a waiver of sovereign immunity for a plaintiff to bring state-law tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances," to the extent that those tort claims arise from the acts of federal employees acting within the scope of their employment. 28 U.S.C. § 2674; *see Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995). The liability of the United States under the FTCA is "determined in accordance with the laws of the state where the event giving rise to liability occurred." *Young*, 71 F.3d at 1242.

The FTCA excepts certain claims, however, from its waiver of sovereign immunity. *See* 28 U.S.C. § 2680. Where one of these exceptions applies, a court lacks subject matter jurisdiction. *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984) ("If a case falls within the statutory exceptions of 28 U.S.C. § 2680, the court lacks subject matter jurisdiction."). One of the FTCA's exceptions is relevant here. In what is known as the "intentional tort exception," the United States retains sovereign immunity for claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander,

6

misrepresentation, deceit, or interference with contract rights.[2]  28 U.S.C. § 2680(h).  Here, the parties dispute whether the intentional tort exception bars the plaintiffs' claims.

### A. The Intentional Tort Exception

The intentional tort exception precludes claims under the FTCA where such claims "arise from" certain intentional torts.  Courts have interpreted the phrase "arise from" broadly.  For example, in 1985, the Supreme Court analyzed the intentional tort exception to the FTCA in the context of allegations that the United States negligently failed to control a soldier, where the military was aware that the soldier had previously been convicted of a violent crime.  *Shearer v. United States*, 473 U.S. 52 (1985).  In *Shearer*, a woman sued the United States because her son, an Army private, was kidnapped and murdered by another serviceman, who was convicted of the murder in a New Mexico court and who had been previously convicted by a German court of manslaughter while assigned to an Army base in Germany.  The woman claimed that the Army's negligent supervision and its failure to control the perpetrator had caused her son's death.  Although a majority of the Court held that the plaintiff's suit was barred by the *Feres* doctrine,[3] four justices also noted that the intentional tort exception to the Act would bar the action because the plaintiff's wrongful death suit against the United States arose from the intentional act of the serviceman's murderer.  Chief Justice Burger, writing for the plurality, explained:

---

[2] The intentional tort exception also contains a proviso, however, that essentially creates an exception to the exception, providing that sovereign immunity is waived with respect to claims arising out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution *by federal investigative or law enforcement officers*.  28 U.S.C. § 2680(h).  This exception to Section 2680(h) is not relevant here.

[3] In *Feres v. United States*, the Court held that a soldier may not recover under the FTCA for injuries which "arise out of or are in the course of activity incident to service."  473 U.S. at 57 (discussing *Feres v. United States*, 340 U.S. 135 (1950)).  The *Feres* doctrine is not relevant here.

7

> [The respondent] cannot avoid the reach of Section 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims for assault and battery; in sweeping language it excludes any claim arising out of assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a government employee.

473 U.S. at 55 (plurality opinion). Since *Shearer*, courts—including the Sixth Circuit—routinely apply the intentional tort exception to dismiss negligent retention and supervision claims where the *only* basis for government liability is the employment relationship between the perpetrator of assault or battery and the government. *See, e.g.*, *Estate of Ezra Smith, et al. v. United States*, 509 F. App'x 436, 442-43 (6th Cir. 2012) (holding that the intentional tort exception barred claim against military for negligent supervision of mentally disturbed serviceman who killed a young man walking to school at Fort Bliss, Texas); *Satterfield v. United States*, 788 F.2d 395, 397 (6th Cir. 1986) (adopting *Shearer* plurality reasoning and concluding that the intentional tort exception barred claims that military negligently supervised servicemen who battered her son to death); *see also Olson v.United States ex rel. Dep't of the Army*, 144 F. App'x 727, 731-32 (10th Cir. 2005) (concluding that the intentional tort exception barred liability as to government's negligence in "screening, training, and supervising" Army recruiter who raped plaintiff).

In 1988, however, the Supreme Court distinguished *Shearer* and instructed that the intentional tort exception does not bar *all* claims of negligence by government employees, where such employees permit a foreseeable assault and battery to occur. *See Sheridan v. United States*, 487 U.S. 392, 401 (1988). In *Sheridan*, the plaintiffs had been shot by an off-duty, intoxicated serviceman near the Bethesda Naval hospital and filed an FTCA claim against the government seeking damages for their injuries. The plaintiffs alleged that the United States was liable because of the negligence of three naval corpsmen. The corpsmen, who had previously observed

8

the assailant as armed and intoxicated, allowed the assailant to leave the naval hospital with a weapon and did not report the assailant to authorities. The district court had dismissed the case pursuant to the intentional tort exception, and the Fourth Circuit affirmed the dismissal. The Supreme Court reversed, however, holding that cases involving negligence in hiring and supervising government employees are not applicable to a situation in which the basis for the government's alleged liability has nothing to do with the assailant's employment status. The majority, led by Justice Stevens, concluded that, where a claim arises out of "two tortious acts, one of which is an assault or battery and the other of which is a mere act of negligence, . . . the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." *Id.* at 398. Accordingly, while "the tortious conduct of an off-duty serviceman, not acting within the scope of his office or employment, does not in itself give rise to government liability," the Court held that the United States could be held liable for breaching its duty to prevent "a foreseeably dangerous individual from wandering about unattended." *Id.* at 402.

Since *Sheridan*, courts have held that the United States may be held liable for negligence under the FTCA where the United States owed and breached a duty *independent* of its duty to supervise the tortfeasor who perpetrated the assault and battery. *See Durden v. United States*, 736 F.3d 296, 308-09 (4th Cir. 2013); *Mackey v. United States*, 247 F. App'x 641, 645 (6th Cir. 2007) (in *dicta*); *Boles v. United States*, --- F. Supp. 2d ---, 2014 WL 79121, at *3-7 (M.D.N.C. Feb. 26, 2014); *LaFrancis v. United States*, 66 F. Supp. 2d 335, 337-39 (D. Conn. 1999). For example, in *Mackey,* the Sixth Circuit assessed a wrongful death action stemming from the murder of a United States Postal Service ("USPS") worker by another USPS employee. In *Mackey*, the plaintiff alleged that her deceased husband's supervisor had knowledge that another

9

employee wanted to kill Mackey, but the supervisor failed to warn Mackey of the threat. Although the court ultimately found that the United States was not liable for Mackey's murder, because the USPS did not have a duty to warn the decedent of the threat under state law, the Sixth Circuit, in dicta, discussed *Sheridan*. There, the court again noted that the intentional tort exception would not preclude a suit based on an independent duty owed by the United States to the plaintiff. Similarly, other courts have denied Rule 12(b)(1) motions where the United States breached a duty either affirmatively adopted or set forth by state law, so long as that duty is independent of the government's employment relationship with the perpetrator of an assault or battery. *See, e.g.*, *Boles*, 2014 WL 79121, at *3-7 (holding that intentional tort exception does not bar plaintiff's negligence claims in suit related to shooting perpetrated by Coast Guard employee, where Coast Guard Armory had assumed responsibility for firearms used in shooting and, accordingly, Coast Guard employees allegedly breached independent duty not to surrender weapons to the shooter in violation of Virginia law and a protective order).

Here, then, the critical inquiry is: did the United States owe any duty to KC and EC independent of the fact that JMC was a government employee?

## IV. **Application**

In its initial brief, the United States argued that dismissal is appropriate because the plaintiffs have attempted to circumvent the intentional tort exception to the FTCA by alleging a negligent supervision and retention claim. Under *Shearer* and its progeny, the government argues that such claims are clearly barred by Section 2680(h). *See, e.g.*, *Satterfield*, 788 F.2d at 397; *Estate of Ezra Smith*, 509 F. App'x at 442-43. Specifically, the government contends that the plaintiffs' theories of liability are premised upon JMC's employment status as a soldier and, therefore, their claims fail because they arise out of JMC's intentional torts.

10

In response, the plaintiffs dispute the categorization of their claims as negligent supervision claims and, instead, raise a new theory of liability (not asserted in the Complaint) as to the government's duty to report JMC's abuse of EC per a Tennessee statute. Citing T.C.A. § 37-1-403(a), the plaintiffs argue that the state of Tennessee imposes an affirmative duty on any person who has knowledge of child abuse to report the abuse to authorities. The statute directs "any person who has knowledge of" abuse to a child immediately to report, by telephone or otherwise, the harm to law enforcement, a department of children's services, or a judge having juvenile jurisdiction over the child. *Id.* The statute additionally directs that a person with knowledge of sexual abuse of a child must *immediately* report it, regardless of whether such person knows that the child has sustained any apparent injury as a result of the abuse. *Id.*; *see also* T.C.A. § 37-1-605. Accordingly, the plaintiffs argue that the United States breached its duty to EC by failing to report JMC's abuse immediately after it learned that JMC had sexually abused EC. The plaintiffs further submit that their negligence claims are premised solely on the government's negligence in its failure to warn and protect EC from a foreseeable and known harm—JMC.

In its Reply, the United States responded to the plaintiffs' invocation of T.C.A. § 37-1-403 with a factual challenge to the allegations of the Complaint. The government appears to argue that, even if the United States possessed an affirmative duty to report JMC's abuse, the evidence shows that the Army did not discover that JMC had produced child pornography until January 13, 2009, shortly before JMC was arrested by authorities. Accordingly, the government submits that, even if the Tennessee statutory duty to report applied to its agents, no agents of the United States violated it. In support of its argument, the United States cites the Lennier Declaration and four relevant documents: (1) an investigative report discussing the initiation of

11

an investigation of JMC, dated September 1, 2008; (2) an affidavit authorizing search and seizure of JMC's belongings, dated September 23, 2008; (3) a document titled "Rights Warning Procedure/Waiver Certificate," identifying the offense of "possession and distribution of child pornography" and apparently signed by JMC, dated September 29, 2008; and (4) an investigative report dated January 14, 2009, describing an army employee's forensic examination of JMC's computer performed on January 13, 2009 and discovery of the pornographic material produced by JMC and featuring the abuse of EC.

As an initial matter, the plaintiffs did not mention T.C.A. § 37-1-403 in the Complaint, much less allege that the United States owed and breached an independent duty owed to the plaintiffs pursuant to the Tennessee law. Generally, in evaluating a motion to dismiss pursuant to Rule 12(b), the court is limited to the allegations of the complaint to assess the sufficiency of the plaintiffs' claims. The Complaint merely asserts that the government breached its duty to control JMC and its duty to protect EC and KC as members of a military family. These allegations are premised solely upon the unique employment relationship between JMC and the Army. Therefore, the plaintiffs' claims against the United States "arise out of" JMC's assault of EC. Accordingly, pursuant to settled law, the intentional tort exception bars the plaintiffs' claims as they are alleged in the Complaint. *Shearer*, 473 U.S. at 55; *Satterfield*, 788 F.2d at 397. Therefore, the court finds that the government's facial challenge to the Complaint is meritorious. Because Section 2680(h) bars the plaintiffs' claims as they are alleged, the court must dismiss the plaintiffs' claims for lack of subject matter jurisdiction.

Because the court will dismiss the plaintiffs' claims on the basis of the government's facial challenge, it need not reach the merits of the government's additional arguments for

dismissal of the plaintiffs' claims, including its 12(b)(1) factual challenge and its 12(b)(6) motion to dismiss for failure to state a claim.[4]

## CONCLUSION

For the reasons stated herein, the United States' motion to dismiss is **GRANTED WITHOUT PREJUDICE.** It is further **ORDERED** that the plaintiffs shall have a period of 14 days to amend the Complaint.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge

---

[4] The plaintiffs failed to file any evidence in response to the government's Rule 12(b)(1) factual attack. Even if the court concluded that the plaintiffs had properly pled that the United States had an affirmative duty to report the abuse of EC to appropriate authorities, the plaintiffs would have needed to present evidence in favor of a finding of subject matter jurisdiction. Here, the court makes no factual findings because it concludes that the plaintiffs have failed to plead that the United States owed them a duty independent of JMC's employment relationship with the United States Army in the first place.