**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **KIMBERLY CLINE, individually,** | ) | |
| **and on behalf of her minor child, E.C.,** | ) | |
| | ) | |
|     **Plaintiffs,** | ) | **Case No. 3:13-cv-0776** |
| | ) | **Judge Trauger** |
| **v.** | ) | |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Pending before the court is a Motion to Dismiss the Amended Complaint (Docket No. 25) filed by the defendant, the United States of America, to which the plaintiffs have filed a Response in opposition (Docket No. 30). For the reasons discussed herein, the motion to dismiss will be granted without prejudice.

## BACKGROUND[1]

On April 7, 2014, this court granted without prejudice the government's Motion to Dismiss the plaintiffs' original Complaint. (Docket No. 21.) The court's April 7, 2014 Order permitted the plaintiffs a period of 14 days to amend their Complaint. On April 18, 2014, the plaintiffs filed an Amended Complaint, which the government has moved to dismiss.

## I.   Allegations of the Amended Complaint

The factual allegations of the Amended Complaint are similar to the factual allegations of the original Complaint, which were detailed in the court's April 7, 2014 opinion, familiarity with

---

[1] Unless otherwise noted, the facts are drawn from the Amended Complaint (Docket No. 22).

which is assumed.  For purposes of context, the court will briefly summarize the events underlying the plaintiffs' claims.

In 2007, plaintiff Kimberly Cline ("KC"), who is the mother of plaintiff EC, a minor child born in 2001, married Joshua Matthew Cline ("JMC").  At the time, JMC was an active duty soldier in the United States Army.  KC, JMC, and EC reside in Clarksville, Tennessee.

According to the Amended Complaint, around March 2008, the Army and other federal agencies began to investigate JMC for possession and distribution of child pornography.  Around the same time, on March 1, 2008, JMC returned to Tennessee from Iraq, where he had been deployed, for a two-week rest and relaxation tour ("R&R").  During his R&R, JMC created and produced pornographic material, including videos and photographs of himself sodomizing and raping EC, who was six years old.  JMC returned to Iraq around March 19, 2008.

On or around September 29, 2008, the Army's Criminal Investigation Division ("CID") interviewed JMC regarding his suspected distribution and possession of child pornography.  The plaintiffs allege that, during that interview, JMC admitted that he possessed child pornography and that he was specifically interested in pornography involving children between seven and ten years old.  According to the Amended Complaint, the CID specifically asked JMC about EC during the September 29, 2008 interview.

The plaintiffs allege that, following the interview and JMC's admission related to child pornography, CID took no action against JMC and did not contact KC, law enforcement in Tennessee, the Tennessee Department of Children's Services ("DCS"), or any authority.  Around October 2008, however, the Army confiscated JMC's computer, which contained photographs and videos of JMC raping and sodomizing EC.

The plaintiffs allege that, around October 3, 2008, JMC called KC from Iraq and alerted her that she would be receiving calls about an Army investigation of JMC. JMC instructed KC "not to answer" questions because he had hired an attorney, and KC was entitled to spousal privilege. JMC did not inform KC about the nature of the investigation. Around October 15, 2008, the Army contacted KC. Initially, KC refused to meet with the Army because of JMC's instruction to keep quiet and assert spousal privilege. The plaintiffs allege that, upon this initial communication, the Army and CID did not inform or warn KC, EC, or any law enforcement in Tennessee regarding the nature of the investigation or any suspected danger that JMC posed to EC.

Around October 19, 2008, CID again contacted KC and threatened that, if she did not meet with Army Family Services, KC would face criminal prosecution. The next day, KC met with local personnel, including Army Family Services and CID, at Fort Campbell Army base.[2] During the October 20, 2008 meeting, KC informed the government that she knew that an investigation was taking place and that JMC had told her that it was a mistake. According to the Amended Complaint, the government and its agents did not permit KC to review the file regarding the CID's investigation of JMC and did not inform her that JMC was being investigated for possession of child pornography. The plaintiffs further allege that KC asked the Army personnel if JMC should be allowed around EC and, in response, all government employees assured KC that the investigation had nothing to do with EC. The agents did, however, instruct "[KC] to limit JMC's interaction with Plaintiff EC." The plaintiffs allege that KC "explicitly and directly asked personnel for Defendant's agencies, Army Services and CID, whether JMC should be allowed to return to the home and be alone with Plaintiff EC and the

_____
[2] Fort Campbell is a military base located in Kentucky and Tennessee.

personnel told her that JMC returning was not a problem, only to limit his time with EC."

Following the October 20, 2008 meeting, the government continued its pattern of silence and did not contact law enforcement authorities in Tennessee.

Around November 14, 2008, JMC returned to the marital home in Tennessee from his deployment in Iraq. Following his return, the Army and its employees made no action to warn KC or to contact law enforcement in Tennessee about any dangers posed by JMC to EC. Around December 6, 2008, JMC repeatedly raped and sodomized EC in the Cline family home while KC was in the hospital giving birth to a son. Following the rape, JMC attempted to sell videos and photographs that he had created in March 2008 showing his past abuse of EC.

In late January 2009, DCS employees contacted KC and threatened that, if she did not return home from work immediately, her children would be taken into state custody.[3] When KC returned to her home, federal agents had searched her property. She was interviewed by one agent, Agent Hendrix, who informed her for the first time that the Army investigation of JMC was based on possession of child pornography. The plaintiffs allege that Agent Hendrix did not inform KC at that time that EC was a suspected victim of JMC. Over a year later, in March 2010, EC told a psychologist about her stepfather's abuse. The psychologist informed KC of her daughter's victimization.

The plaintiffs plead that the Army failed to warn KC and her daughter, as well as federal and local law enforcement, of the dangers posed by JMC when the government began its investigation in March 2008 and after JMC admitted to possession of child pornography in September 2008. They assert that such omissions were negligent, willful, deliberate, knowing,

---

[3] Although it is not properly considered at the Rule 12 stage, the court notes that the Lennier Declaration represents that, sometime before DCS threatened to take KC's children, the Army determined that JMC had in fact raped and sodomized EC.

and malicious, and allege that the defendant's actions resulted in pain, suffering, emotional distress, and a variety of other losses.

## II.    **Procedural Background**

The plaintiffs filed this action on August 5, 2013, alleging five claims under the Federal Tort Claims Act, 28 U.S.C. § 1346 *et seq.* ("FTCA" or "Act"): (1) intentional infliction of emotional distress, (2) negligent infliction of emotional distress, (3) common law negligence, (4) negligence *per se*, and (5) failure to warn.  On November 15, 2013, the government moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In their Response in opposition to the government's first Motion to Dismiss, the plaintiffs asserted a new theory of liability based on Tennessee's mandatory child abuse reporting statutes, T.C.A. §§ 37-1-403(a) and 37-1-605. The plaintiffs argued that the state of Tennessee imposes an affirmative duty on any person who has knowledge of child abuse to report the abuse to the authorities.  Accordingly, the plaintiffs contended that the government had breached its duty to the plaintiffs because it had known of or suspected JMC's abuse of EC, yet failed to report the abuse immediately.

On April 7, 2014, the court granted the government's motion to dismiss after it concluded that the intentional tort exception to the FTCA bars the plaintiffs' claims as pled in the Complaint, which were premised solely upon the Army's negligent supervision and retention within its ranks of JMC.  The court further noted that, because the plaintiffs did not mention T.C.A. §§ 37-1-403(a) and 37-1-605 in their Complaint (only in their brief opposing dismissal), the court could not consider the Tennessee statutory duty in its evaluation of the government's first motion to dismiss.

The plaintiffs filed their Amended Complaint on April 18, 2014.  The Amended Complaint pleads five causes of action under the FTCA: (1) intentional infliction of emotional

distress, (2) negligent infliction of emotional distress based upon the government's breach of its duty to warn, as set forth by T.C.A. §§ 37-1-403(a) and 37-1-605, (3) common law negligence based upon the government's breach of its duty under T.C.A. §§ 37-1-403(a) and 37-1-605, (4) negligence *per se*, rooted in the government's failure to report/warn under T.C.A. §§ 37-1-403(a) and 37-1-605, and (5) an individual claim for failure to report/warn in violation of T.C.A. §§ 37-1-403(a) and 37-1-605.

The government articulates a variety of alternative theories in the instant motion to dismiss. First, the government argues that it is entitled to dismissal pursuant to Rule 12(b)(6) because the Amended Complaint does not allege a breach of any recognized duty owed by the United States. Specifically, the government argues that the plaintiffs have failed to state a claim for negligence because (1) Tennessee's reporting statute does not create a private right of action for individuals, and (2) the plaintiffs have not pled that the United States knew that JMC abused EC and failed to report it to the state. The government further argues that the plaintiffs have failed to properly plead their intentional infliction of emotional distress claim because the intentional tort exception bars their claim and, even if the claim were not barred, the alleged government misconduct was not so outrageous as to plead a *prima facie* case of intentional infliction of emotional distress.

The government also moves to dismiss the plaintiffs' claims on the ground that the court lacks subject matter jurisdiction. In particular, the government contends that the plaintiffs' claims are barred by the FTCA's "discretionary function exception." The government further argues that the court lacks jurisdiction over claims for negligence because Tennessee statutory law does not apply to the CID agents who investigated JMC in Iraq, even if they were negligent as to EC. Finally, the government asserts a factual challenge to the court's subject matter

jurisdiction, submitting the Declaration of John Lennier, which includes Army CID records related to the investigation of JMC. The government appears to argue that the Lennier Declaration and its exhibits demonstrate that CID did not know of abuse until January 2009, after the last alleged incident of rape occurred, and therefore, the government's omission could not have caused the plaintiffs' injuries. For these reasons, the government contends, the court lacks subject matter jurisdiction to hear the claim.

## ANALYSIS

The government has moved for dismissal based on Federal Rules of Civil Procedures 12(b)(1) and 12(b)(6). This court is bound to consider the 12(b)(1) motion first, as the 12(b)(6) challenge becomes moot if subject matter jurisdiction is lacking. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946) (concluding that a motion to dismiss for failure to state a claim may be decided only after the establishment of subject matter jurisdiction because determination of the validity of the claim is itself an exercise of jurisdiction)).

## I.      Motion to Dismiss for Lack of Subject Matter Jurisdiction

### A.  Standard

Because a court that lacks subject matter jurisdiction over a case does not have the power to hear it, the question of subject matter jurisdiction may be raised at any time. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *United States v. Alesida*, 129 F.3d 846, 850 (6th Cir. 1997). When a defendant attacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must meet the burden of proving jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

A Rule 12(b)(1) motion may challenge the complaint on its face, or it may contest the existence of subject matter jurisdiction in fact. If the motion attacks the face of the complaint, the plaintiff's burden "is not onerous." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The plaintiff need only demonstrate that the complaint alleges a "substantial" federal claim, meaning that prior decisions do not inescapably render the claim frivolous. *Id.* A court evaluating a facial attack must consider the allegations of fact in the complaint to be true. *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999). Thus, "the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248.

Alternatively, if a Rule 12(b)(1) motion contests subject matter jurisdiction factually, the court "must weigh the evidence" in order to determine whether it has the power to hear the case. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When the facts are disputed, "[t]he district court has broad discretion to consider affidavits, documents outside the complaint, and to even conduct a limited evidentiary hearing if necessary." *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn. 1992), *aff'd sub nom. Myers v. United States*, 17 F.3d 890 (6th Cir. 1994). The court can do so without converting the Rule 12(b)(1) motion into a motion for summary judgment. *Id.*

### B. Subject Matter Jurisdiction and the Amended Complaint

The government argues that the court lacks subject matter jurisdiction over the plaintiffs' claims for three reasons: (1) the discretionary function exception to the FTCA applies and, therefore, sovereign immunity of the United States is not waived; (2) the Tennessee mandatory reporting statutes, the only alleged basis for inferring a duty on the part of the government, does not apply to federal employees operating on Army bases in Iraq and elsewhere; and (3) the

Lennier Declaration supports a finding that CID did not know of JMC's abuse of EC until January 2009 and, therefore, the government's failure to act could not have proximately caused JMC's abuse of EC in December 2008. The first two grounds for dismissal pursuant to 12(b)(1) appear to be facial challenges to the Amended Complaint, but the government identifies the third ground for dismissal as a "factual" attack.

As an initial matter, the government's "factual attack" based on the Lennier Declaration and the element of "proximate cause" is not a challenge to the court's power to hear the case. The question of when the government knew or reasonably suspected that JMC had abused EC is irrelevant to the question of whether or not the court has power to hear the action. Indeed, the government appears to ask the court to weigh its evidence—the Lennier Declaration—against the allegations of the Amended Complaint for purposes of evaluating the truth of the allegations. Such a challenge is, in reality, an attack on the factual accuracy of the plaintiffs' claims that is inappropriate at the Rule 12 stage. Accordingly, the court need not consider the government's faux "factual" challenge for purposes of assessing its subject matter jurisdiction over the Amended Complaint.

## 1. The FTCA's Discretionary Function Exception

The FTCA provides a waiver of sovereign immunity for a plaintiff to bring state-law tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances," to the extent that those tort claims arise from the acts of federal employees acting within the scope of their employment. 28 U.S.C. § 2674; *see Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995). The liability of the United States under the FTCA is "determined in accordance with the laws of the state where the event giving rise to liability occurred." *Young*, 71 F.3d at 1242.

The FTCA's waiver of sovereign immunity is limited and contains a series of exceptions. *See* 28 U.S.C. § 2680(h). Among others, these exceptions include the intentional tort exception, which was discussed in the court's April 7, 2014 opinion, and the discretionary function exception, which the government now alleges bars the claims alleged in the Amended Complaint. The discretionary function exception states that the FTCA's waiver does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* § 2680(a). "If a claim falls within this exception, then federal courts lack subject-matter jurisdiction, and the claim must be dismissed." *See Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012).

To determine whether a claim falls within the discretionary function exception, courts apply a two-part test. *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)) ("*Gaubert* test"). The first step

> requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. If there was such a violation of a mandatory regulation or policy, then the discretionary-function exception will not apply, because there was no element of judgment or choice, and thus the employee has no rightful option but to adhere to the directive.

*Id.* (internal citations omitted). On the contrary, if "there was room for judgment or choice in the decision made, then the challenged conduct was discretionary. In such a case, the second step of the test requires a court to evaluate whether the conduct is of the kind that the exception was designed to shield from liability." *Id.*

Here, the government argues that the conduct challenged by the plaintiffs is the manner in which the Army conducted its investigation of JMC. The government argues that, because no federal statute, regulation, or policy specifically prescribes a course of action that the Army should have followed in terms of reporting the danger that JMC posed to EC, the Army's

10

decision not to notify the appropriate authorities in Tennessee was discretionary and, therefore, falls within the exception.

In response, the plaintiffs narrow the conduct at issue and identify a relevant federal statute that, they argue, specifically directed the Army as to how to act. They argue that the plaintiffs' allegations of misconduct are solely premised upon the government's failure to report suspected (not necessarily *known*) child abuse, specifically sexual abuse, to the proper authorities, which ultimately led to EC being victimized again by JMC in December 2008. The plaintiffs identify 42 U.S.C. § 13031, a federal statute titled "Child abuse reporting," as a federal statute specifically prescribing a course of action that the Army should have followed upon suspicion of JMC's abuse of EC.[4] The government failed to file a Reply to the plaintiffs' Response in opposition to the pending motion. Consequently, the government did not respond to the plaintiffs' invocation of Section 13031 and has failed to offer any reason why Section 13031 would not remove the plaintiffs' claims from the scope of the discretionary function exception.

Section 13031 states:

(a) In general

A person who, while engaged in a professional capacity or activity described in subsection (b) of this section on Federal land or in a federally operated (or contracted) facility learns of facts that give reasons to suspect that a child has suffered an incident of child abuse, shall as soon as possible make a report of the suspected abuse to the agency designated under subsection (d) of this section.

42 U.S.C. § 13031. Subsection (b) of the statute identifies "covered professionals" subject to the statute, including, *inter alia*, (1) physicians; (2) social workers; (3) teachers; (4) child care workers; and (5) **law enforcement personnel, probation officers, and criminal prosecutors**. *Id.*

---

[4] The plaintiffs need not have pled Section 13031 in their Amended Complaint in order for it to be considered at stage one of the *Gaubert* test. *Kohl*, 699 F.3d at 941-43.

(emphasis added). The statute defines "child abuse" as "physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child." The statute further states that, "[f]or all Federal lands and all federally operated (or contracted facilities) in which children are cared for or reside, the Attorney general shall designate an agency to receive and investigate the reports described in subsection (a)." *Id.* The plaintiffs argue that, according to 28 C.F.R. § 81.2, in the case of EC, the Army was obligated to report the abuse to an appropriate authority in Tennessee with jurisdiction over the matter, for instance, DCS or the Clarksville Police Department.

The court agrees with the plaintiffs that Section 13031 is a mandatory reporting statute that, according to the allegations of the Amended Complaint, applies to the law enforcement personnel who investigated JMC, both at an Army base in Iraq and at Fort Campbell in the United States. The court makes no factual determination as to whether the government's agents did actually learn of facts that gave them reason to suspect that EC (or any child) had been abused by JMC, but concludes that the allegations as to the government's alleged misconduct— its failure to warn, assuming that it did reasonably suspect that a child had been harmed—do not fall within the discretionary function exception.[5] Accordingly, the discretionary function exception does not strip the court of its subject matter jurisdiction in this case.

---

[5] The plaintiffs appear to argue that, because the government (1) knew that JMC admitted to possessing child pornography, (2) knew that JMC admitted to an attraction to children between seven and ten years old, and (3) knew that JMC had a stepdaughter around that age at home, the government had learned facts that gave them reason to suspect that a child had suffered abuse. The court would hesitate to agree that, in all cases, because a government agent has knowledge that a man possesses child pornography, is attracted to children, and that the man has a child of similar age at home, the government possesses knowledge or suspicion of child abuse. However, other allegations of the plaintiffs' Amended Complaint give rise to inferences that, in this case in particular, the government agents investigating JMC suspected that he had either harmed children (or EC) in the past, or that he had the potential to harm EC. In particular, Paragraphs 33-35 of the Amended Complaint allege that, when asked by KC if the Army's investigation was in any way related to EC, government agents insisted that the investigation was unrelated to EC.

2. <u>Application of Tennessee Law to the Failure to Act of the Army Agents</u>

The government further argues that the court lacks subject matter jurisdiction over the plaintiffs' claims because the Amended Complaint does not allege an applicable legal basis for liability. The FTCA states that the United States can be held liable "for injury . . . if a private person would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*." 28 U.S.C. § 1346(b) (emphasis added). The government argues that the Amended Complaint pleads one legal basis for liability under the FTCA—Tennessee's statutory mandatory reporting requirements. The government contends that, because the acts or omissions allegedly committed by the government occurred in Iraq and at Fort Campbell, Tennessee's statutes alone do not apply to this case, and the plaintiffs have failed to plead a "law of the place" where the act or omission occurred. Consequently, the government contends, the plaintiffs' FTCA claims fail, the government's sovereign immunity is triggered, and the court lacks subject matter jurisdiction.

The court agrees. As pled, the Amended Complaint does not allege an applicable legal basis for liability as to negligence that appears to have occurred only on federal property in Iraq and on a military base located within the United States. Instead, the Amended Complaint merely alleges violations of Tennessee's mandatory reporting statutes. In their response to the pending motion, the plaintiffs, for the first time, cite to Section 13031 and argue that a federal statute can be used to satisfy the "law of the place" requirement of the FTCA when considered in

Despite insisting that the investigation was unrelated to EC, however, the plaintiffs allege that the government agents warned (perhaps multiple times) KC to limit JMC's interaction with EC. Given that the Army agents specifically instructed KC to limit JMC's interactions with EC, the pleading suggests that the government agents must have possessed at least some suspicion that JMC had harmed EC or another child in the past or that EC was at risk.

conjunction with the law of the state where the act or omission occurred.[6]  As explained by the court in its previous opinion in this case, in evaluating a motion to dismiss pursuant to Rule 12(b), the court is limited to the allegations of the operative pleading.  Here, the Amended Complaint asserts merely that the government breached its purported duty under *Tennessee* law (alone) to report its suspicions to authorities.  The plaintiffs have failed to provide any explanation for why Tennessee law, standing alone (without the federal statute[7]), should reach the government agents here.

Because the plaintiffs' Amended Complaint fails to allege an applicable legal basis for a claim of liability arising under the FTCA, the court concludes that it lacks subject matter jurisdiction over the plaintiffs' claims.[8]  Accordingly, the government's Motion to Dismiss on

---

[6] This is the second time that the plaintiffs have argued that a legal basis for liability exists without including relevant allegations in their pleading.  Going forward, the court will not overlook such errors.

[7] It is well settled that, in cases brought under the FTCA, the "law of the place" requirement is sufficiently satisfied when allegations of federal statutory breach are made, so long as the federal statute has a state analogue.  As the plaintiffs note, at least one federal court has held that Section 13031, when taken in conjunction with a state analogue (here, the Tennessee mandatory reporting statutes), may serve as the basis for an FTCA claim.  *See Zimmerman ex rel. Zimmerman v. United States*, 171 F. Supp. 2d 281 (S.D.N.Y. 2001); *see also Schindler v. United States*, 661 F.2d 552, 560-61 (6th Cir. 1981) ("It is clear that usually the federal regulatory statute is not the source of a private cause of action.  State law is the source of the cause of action, the United States' customary immunity thereto being waived by the FTCA.  The federal statute or regulation may well be related to the analysis of the state cause of action, however. . . . In determining the first element, the existence of a duty from the plaintiff to the defendant, the federal regulatory statute may be relevant in defining the scope of the undertaking of the United States and the plaintiff's right to rely thereon, if the action is based on an alleged failure of the United States to observe its own regulations.  The federal regulation or statute may also be relevant in assessing the second element of the cause of action, if, under state law criteria, it may be considered the kind of statute or regulation violation of which is negligence *per se*.").

[8] Because the court concludes that it lacks subject matter jurisdiction over the plaintiffs' claims as pled, it need not reach the additional grounds for dismissal asserted by the government.

this ground will be granted and the plaintiffs' claims will be dismissed. However, the dismissal of the plaintiffs' claims will be without prejudice. Given the gravity of the plaintiffs' allegations and, if true, the reprehensibility of the government's omissions, the court will give the plaintiffs one more chance to amend their pleading. The plaintiffs should not expect any further leniency from the court with respect to clarifying their claims.

## CONCLUSION

For the reasons stated herein, the government's motion to dismiss is **GRANTED WITHOUT PREJUDICE.** It is further **ORDERED** that the plaintiffs shall have a period of 14 days to amend the Complaint.

It is so **ORDERED**.

Enter this 18th day of September 2014.

ALETA A. TRAUGER
United States District Judge